## In re VAMOS.

District Court, S. D. New York.
March 22, 1935.

701

David L. Podell, of New York City (Jacob J. Podell and Mortimer Feuer, both of New York City, of counsel), for objecting creditor.

Louis H. Robinson, of New York City (Albert M. Lee and J. George Levy, both of New York City, of counsel), for bankrupt.

PATTERSON, District Judge.

The bankrupt applied for his discharge. Bondy, a creditor, filed specifications in opposition. There were three specifications: First, that the bankrupt had made false oath in failing to list as an asset beneficial ownership in certain shares of stock; second, that he had concealed the ownership of such shares from the trustee in bankruptcy; third, that he had obtained money by false statement in writing respecting his financial condition. The referee to whom the case was sent has reported that the third specification is sustained by the proof. He made no finding as to the first two specifications.

A reading of the record shows that the proof offered by the objecting creditor as to false oath and concealment of property was meager and wholly insufficient. The evidence indicated that the stock in question was owned by the bankrupt's son and by his wife. These two specifications will be dismissed. The only substantial question is whether the third specification was established.

The third specification is in substance this: That the bankrupt fraudulently obtained a loan of $6,000 from Bondy by representing in writing that Bondy would receive as collateral 1,500 shares of stock of American Business Journals, Inc., and by further representing, by written financial statements concerning the corporation, that the shares had a value in excess of $6,000, whereas in truth the shares had no such value and were never even received by Bondy.

The specification is insufficient on its face. It is an attempt to interpose an objection to the discharge under section 14b (3) of the Bankruptcy Act, as amended in 1926, to the effect that the bankrupt shall not be discharged if he has "obtained money or property on credit * * * by making or publishing * * * a materially false statement in writing respecting his financial condition." 11 U.S.C.A. § 32 (b) (3). The false statement, to bar discharge, must be one respecting the bankrupt's financial condition. Misrepresentations as to other material facts will not suffice. Johnston v. Johnston, 63 F.(2d) 24 (C.C.A.4); In re Current, 63 F.(2d) 640 (C.C.A.7); In re Little, 65 F.(2d) 777 (C.C.A.2); In re Scheffler, 68 F.(2d) 902 (C.C.A.2). The allegation that the bankrupt represented in writing that the creditor would receive as collateral certain shares of stock cannot possibly be deemed a "statement in writing respecting his financial condition"; the mere nonfulfillment of the promise to deliver the stock did not make the statement a false one in any respect, much less a false one as to financial condition. Nor is a mere statement that the shares were worth over $6,000, said to be untrue, a false statement respecting the bankrupt's financial condition. For all that is pleaded, the shares did not belong to the bankrupt but were borrowed by him to be used as collateral. This then on its face was no more than a false representation.

Passing from pleading to proof, we find in the creditor's case deficiencies more serious. The proof is that on August 30, 1929, the bankrupt borrowed $6,000 from Bondy on his note. At the time he executed a written assignment of 1,500 shares of stock in American Business Journals, Inc., as collateral security to the note, and in the same writing he authorized the transfer agent to make the transfer. The bankrupt then owned some 63,000 shares of the stock. The shares were tied up at the time, but Bondy was well aware of that fact because they were tied up by agreement between him and the bankrupt relative to the sale of shares to the public. This writing doubtless constituted a promise by the bankrupt to deliver the shares, a promise that for certain reasons was not performed; but it will not do to term it a false statement in writing concerning the bankrupt's financial condition. Robinson v. J. R. Williston & Co., 266 F. 970 (C.C.A.1).

At the same time the bankrupt gave Bondy a second paper, an option to buy the 1,500 shares at $4 a share. The contention that this option to buy the shares for $6,000 was a statement by the bankrupt that the shares were worth $6,000

702

is too fanciful for serious discussion. The plain truth is that there was no representation in writing that the shares were worth $6,000.

The referee found that a third paper had been given to Bondy by the bankrupt in connection with this loan. The weight of evidence, I think, is to the effect that this writing did not come into existence until several days later. However that may have been, the writing was not shown to have contained any statements materially untrue. This writing purported to be a "condensed consolidated statement of income, profit and loss" of American Business Journals, Inc., for a five-year period; it also stated that net profits for the first three months of the year had been at the rate of $200,000 a year, and that "officers and directors" of the corporation had verified all statements in the paper. The bankrupt owned a minority of the stock in the corporation. Bondy knew perfectly well that this consolidated statement purported to represent not the corporation's own earnings, but the aggregate earnings of the four constituent companies that had been combined only a month earlier. There is no evidence that a single figure in the statement was false. True, the bankrupt testified that some months later he discovered that in the case of one of the four constituent companies there had been an undisclosed liability of $150,000, and that the circulation of the magazine of that company had been only 20,000 copies instead of 40,000. These matters, however, went only to prove breach of certain warranties made by that company in selling its business to the consolidated company; they did not indicate falsity in the statement as to earnings that was given to Bondy. The argument of the objecting creditor blurs the distinction between a statement of earnings and a statement of assets and liabilities.

It is claimed that at least the representation that officers and directors had verified the figures was false. The evidence does not support even this claim. The bankrupt testified that he verified the figures as to the constituent company controlled by him, but did not verify the figures of the other three companies. But this does not indicate that other officers and directors of the corporation did not verify the figures relative to the other companies that went to make up the totals. It is useless, however, to pursue the subject of falsity further. In the first place, the statement was not false to a material extent. In re Lessler, 74 F.(2d) 249 (C.C.A.2). In the second place, by no stretch could a false representation relative, not to corporate earnings, but to mere verification of corporate earnings, be deemed a false statement respecting the bankrupt's own financial condition.

The opposing parties have discussed in their briefs whether a false statement of the financial condition of a corporation may constitute also a false statement respecting the financial condition of one of its stockholders within the scope of section 14. See Levy v. Industrial Corporation, 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572; In re Little, supra. That point need not be decided here, because there are not sufficient grounds for believing that the statement of corporate earnings was false.

In conclusion, the written statements given in connection with obtaining the loan were not untrue. Even if untrue, there was no evidence that they were willfully untrue. They were not statements concerning the bankrupt's financial condition. The objecting creditor did not make out a prima facie case as to any specification.

The specifications will be dismissed, and the bankrupt granted a discharge.