## In re WEINER.
## ROEDING v. WEINER.
### No. 185.

Circuit Court of Appeals, Second Circuit.
April 24, 1939.

McCole & Reid, of New York City (Samuel J. Reid, Maxwell Green, and Milton Schaeffer, all of New York City, of counsel), for appellant.

Abraham B. Hertz, of New York City (Abraham B. Hertz and Nathan H. Herman, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS ·N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. ·

The objecting creditor Roeding filed five specifications of objections to the discharge of the bankrupt Weiner, Each of them was overruled by the District Court, after a hearing and report by a special master, and the bankrupt was granted a discharge. As we hold that the first specification ought to have been sustained it is unnecessary to discuss any of the others.

The first specification recited that on the 31st day July, 1934, the bankrupt was indebted to Frederick F. Roeding, the objecting creditor, in the sum of $10,577.98 represented by a promissory note of the bankrupt and his wife in that amount and made payable on demand to the order of Roeding; that on or about the 2nd of August, 1934, the bankrupt and Roeding entered into an agreement in writing for the purpose of obtaining an extension of credit for the payment of the note of $10,-577.98; that in such agreement the bankrupt represented to Roeding that he had a valid claim against one Jed Harris for the sum of $2,500 which was due May 1, 1934, and, by the agreement, assigned such claim to Roeding as partial security for the payment of the note; that Roeding relied on the representation, entered into the agreement and continued it in force until about March 30, 1936, believing such representation to be true; that the representation of the bankrupt that he had a valid claim against Harris for $2,500 was false and known to be false; that at the time of entering into the agreement the bankrupt did not have a valid claim against Harris for $2,500 due May 1, 1934, nor was Harris indebted to the bankrupt in any sum whatever.

The bankrupt was engaged in procuring theatrical advertisements and placing them with newspapers. In this business Roeding, the objecting creditor, had an interest. The bankrupt collected various sums of money from customers of Roeding, failed to turn them over to the latter, and converted them to his own use. Thereupon a settlement was reached between Roeding and the bankrupt whereby the bankrupt gave Roeding his promissory note dated July 31, 1934 payable to the latter on demand.

By the agreement of August 2, 1934 the bankrupt assigned to Roeding the following sums of money recited to be then due to the bankrupt:

| | |
|---|---|
| Jed Harris, due May 1, 1934, | $2,500. |
| Lyceum Theatre Bill, June 23, 1934 | 630. |
| Lyceum Theatre Bill, June 30, 1934 | 628.32 |

The bankrupt agreed to use his best efforts to collect the above accounts and to receive as trustee for Roeding any moneys paid by the foregoing three debtors and to turn over to Roeding without deduction any amounts thus collected, who was to apply them against the note. The bankrupt also agreed that until the note should be paid in full with interest he would receive all money in payment of bills rendered or to be rendered for advertising, as agent and trustee for Roeding, and would forthwith turn over the same to the latter. Roeding agreed to apply, until October 1, 1934, 1% of the gross amount of any bill paid to him toward the reduction of the note for $10,577.98 and to turn over to the bankrupt the balance

of the profit realized from the business. Roeding also agreed that after October 1, 1934, from each week's receipts he should receive a sum equal to 2½% of the gross amount of the advertising and that out of the balance (provided always there should be sufficient profit) the bankrupt should receive all profits up to the sum of $125 and that any sum still remaining after the foregoing payments were made should be divided equally between the parties. These payments to Roeding were in addition to a regular percentage or commission payable to him out of the total business.

In our opinion the facts of this case require a denial of a discharge by reason of the provisions of the statute, 11 U.S.C. A. § 32(c), that "the court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * * provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

It is argued for the bankrupt that there was no extension of credit because the note given was a demand note and the agreement contained no express words extending the payment of the debt. We think, however, that in spite of the form of the note the transaction and document taken together involved an extension of credit, provided the bankrupt kept his part of the compact and turned over all collections to Roeding as he had promised to do.

There was plainly a false representation about the Jed Harris claim. The bankrupt was only an accommodation endorser upon a note of Harris held by a bank. The bankrupt never paid it and was only secondarily liable thereon. The note was in fact paid by Harris. To list it as an asset, as the bankrupt did, and to assign it as additional collateral to the note held by Roeding involved a palpably false representation. It also involved a ma-

terially false statement by the bankrupt "in writing respecting his financial condition" for the reason that it represented that a claim which was not an asset at all was part of the property of the bankrupt. It seems clear to us also that the statement must have been deliberately false. It represented as an asset what was only a contingent liability and it is unreasonable to suppose that any man in business could make such a statement in good faith. We accordingly hold that the first specification should be sustained.

Order reversed; the first specification is sustained and discharge denied.