## ALBINAK v. KUHN.

### In re MANUFACTURERS TRADING CORPORATION.

No. 9862.

Circuit Court of Appeals, Sixth Circuit.

April 30, 1945.

Nelson S. Shapero, of Detroit, Mich. (Jay F. McMullen, of Detroit, Mich., on the brief), for appellant.

Noble T. Lawson, of Detroit, Mich. (Anderson, Wilcox, Lacy & Lawson, Irwin I. Cohn, and Samuel R. Greenbaum, all of Detroit, Mich., Alfred H. Sachs, of Cleveland, Ohio, and Birnkrant, Birnkrant & Birnkrant, of Detroit, Mich., on the brief), for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was adjudicated a bankrupt on March 25, 1943, following his petition for arrangement under Chapter XI, 11 U.S.C.A. § 701 et seq. filed January 12, 1943. He duly filed his petition for discharge, but upon specifications in objection thereto, submitted both by the trustee and the co-appellee, discharge was denied on the ground that he had transferred property to his wife with the intent to hinder, delay, and defraud his creditors, and on the further ground that he had obtained money or property on credit by making or publishing a materially false statement in writing respecting his financial condition. It is

from the order denying his discharge that he appeals.

Prior to the filing of his petition in bankruptcy the appellant was engaged in the manufacture of jigs and tools for approximately 2 years, and had received a large volume of orders for war products. Because of limited capital he found it necessary to hypothecate his invoices with finance companies in order to obtain money sufficient to meet payrolls. He made an arrangement with the Manufacturers Trading Corporation of Cleveland, Ohio, whereby it would purchase accounts then held by another investment company and discount additional accounts. On October 21, 1942, the bankrupt assigned to the Trading Company 96 invoices covering separate and distinct transactions with 19 of his customers, listing debts purporting to be due and owing to him from them, totaling upwards of $60,000. At a later date he made a second assignment which also listed a large number of invoices and accounts purporting to be due him. At the time of the execution of the contract he submitted a written statement purporting to be a true balance sheet of his assets and liabilities as of September 30, 1942, this balance sheet being, by reference, made a part of the original contract and subsequent assignments. The balance sheet is not made part of the record though it is alleged by the objectors to discharge that it was false and untrue, and that its falsity was not denied by the bankrupt.

The assignment of accounts is, however, presented on appeal by supplemental record, and the first assignment, in addition to listing the 96 debts owing to the bankrupt, recites that for the express purpose of inducing the Trading Corporation to part with its money and to purchase the accounts from the assignor, the assignor covenants and warrants that the financial statements, invoices, orders, proofs of delivery, and other documents submitted to the assignee, and which are made a part of the assignment, are absolutely true and genuine; that the goods described in and covered by such invoices and statements of account were manufactured strictly in accordance with the specifications of the purchasers, were not on consignment, were shipped to the purchasers on bona fide orders, not in any way, cancelled, countermanded or altered; that the accounts were without set-offs; that the purchasers are indebted to the assignor in accordance with the invoices; that the goods had not been previously conveyed, sold or pledged; that the title to the accounts had not been wholly or partially transferred; that no one had acquired any lien, right, or title to them; that the purchasers had not paid any part or all of the purchase price of the goods, nor returned the merchandise; that all collections received or credits allowed upon any of the accounts had been duly credited to the accounts of the respective customers, and, finally, that the assignor, as well as the purchasers on said accounts, are solvent.

The specifications in objection to discharge also recited that on February 2, 1942, the bankrupt contracted for the purchase of a new home in an amount in excess of $20,000, and took title to the property in himself and wife, creating an estate by the entireties; that he did so in order to place the property beyond the reach of his creditors, since under Michigan law such an estate is not subject to the debts of either spouse separately; that in furtherance of this same purpose he executed a quitclaim deed of his interest in the said property to his wife on May 14, 1942, withheld from record until October, and that the final payment on the purchase price of the property was made after an audit of the books of the bankrupt had shown him to be insolvent.

It is, in our view, entirely immaterial to the issue here involved, that the bankrupt quit-claimed his interest in the property to his wife either in May or in October. Under Michigan law a title validly residing in husband and wife may not involuntarily be sold or encumbered for the debts of either. Turner v. Davidson, 227 Mich. 459, 198 N. W. 886; Farrell v. Paulus, 309 Mich. 441, 15 N.W.2d 700; American State Trust Co. v. Rosenthal, 255 Mich. 157, 237 N.W. 534. As was said by the court in the Farrell case [309 Mich. 441, 15 N.W.2d 702], "If it [the quit-claim deed] were set aside the title would again be in the name of Paulus and wife as tenants by the entirety and plaintiff would not be aided thereby because neither the land nor the rents and profits therefrom would be subject to levy on execution for the sole debt of the husband." The important consideration is whether at the time of purchasing the property in February, or at the time of taking title in May, in such manner as to create an estate by the entireties, the bankrupt was insolvent. Both acts occurred within one year prior to the filing of the petition in bankruptcy, and so

are void under the provisions of § 67 of the Chandler Act, 11 U.S.C.A. § 107, as well as under the provisions of the Uniform Fraudulent Conveyance Act of the State of Michigan, Act 310, 1919, Compiled Laws 1929, § 13,392 et seq., if the bankrupt was at the time insolvent, and the conveyance was made with intent to defraud creditors. There is, however, no finding by referee or court that in February or May of 1942 the bankrupt was insolvent, and no evidence submitted of record by which insolvency upon either date may confidently be determined. We are not satisfied that the specifications in objection to discharge were on this ground sustained.

 In reference to the other specification of objection we reach a contrary conclusion. Section 14 of Chapter 3 of the Bankruptcy Act, 11 U.S.C.A. § 32, provides:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property or credit * * * by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition * * *."

The question before us is whether the several assignments of accounts with their respective warranties and covenants already recited, constitute materially false statements in writing respecting the bankrupt's financial condition. That material statements therein contained were false, is, on the appeal, conceded, and the referee found that many accounts were listed in the assignments which had, prior to their date, been collected and the money otherwise used; that other accounts were therein listed which were not due and owing, because the merchandise ordered had not yet been manufactured or delivered. The argument is made that these assignments, notwithstanding their covenants, do not constitute a financial statement, implying, of course, that a financial statement is a term of art and purports to be a complete statement of assets and liabilities by which the precise financial worth of the person making the statement can be determined. However, the statute does not use the phrase "financial statement." It refers to a false statement respecting financial condition, made or published "in any manner whatsoever." The argument is, we think, tenuous, that a written statement listing as assets accounts which have no existence whatsoever, running into many thousands of dollars and including practically all of the receivables of the assignor, are not statements respecting the maker's financial condition.

But be that as it may, the assignments warrant and covenant that at their date the assignor was solvent, and so, however persuasive may be the reasoning that a false statement of receivables is not a statement of financial condition, a warranty of solvency can be and is nothing else. That the representation as to the bankrupt's solvency was false, the record provides no room for dispute. The first assignment is dated October 21, 1942; the second assignment is not in the record but was made later, and is not reprinted because substantially in terms identical with the first assignment. The referee found, unequivocally, that a complete audit of the bankrupt's business, made by certified public accountants, showed the bankrupt to be insolvent as of the month of August, 1942. Neither the audit nor other evidence upon which this finding was based, is by the appellant produced of record, and in no respect does his brief challenge the finding. We accept it as conclusive and final.

 No cases have been cited to us, and none has been found by careful examination, which confines a statement respecting one's financial condition as limited to a detailed statement of assets and liabilities. The appellant relies heavily upon Johnston v. Johnston, 4 Cir., 63 F.2d 24.[1] The case is not apposite. It deals with the immateriality of a representation which, though false, had no bearing upon the financial condition of the bankrupt. The District Court cases cited pro and con, are likewise concerned with the materiality of representations contained in statements concededly financial. In re Vamos, D.C., 14 F. Supp. 700; In re Morgan, 2 Cir., 267 F. 959; In re Little, 2 Cir., 65 F.2d 777. If the present assignments, in the factual circumstances of this case, having in mind the multiplicity of accounts assigned, the numerous covenants and warranties, including the covenant as to solvency, constitute a statement respecting the bankrupt's financial condition, the alleged false representations are clearly material. We

---

[1] Erroneously cited in briefs of both litigants, requiring the court to undertake an independent search.

do not overlook the fact that provisions for discharge are to be liberally construed. We are likewise cognizant of the rule that concurrent findings of referee and court are not to be set aside except for clear demonstration of mistake.

The judgment is affirmed.