IN RE: Pamela DRUMMOND, Debtor

United States of America; Social
Security Administration,
Plaintiff

v.

Pamela Drummond, Defendant

No. 4:14–bk–13051
AP 4:14–ap–1081

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Signed April 29, 2015

**708**

Lindsey Mitcham Lorence, U.S. Attorney's Office, Little Rock, AR, Eric H. Holder, Jr., U.S. Department of Justice, Washington, DC, for Plaintiff.

Jeremy Bueker, Niblock & Bueker, Stuttgart, AR, for Defendant.

**ORDER**

Ben Barry, United States Bankruptcy Judge

Before the Court is the complaint of the United States, Social Security Administration [SSA] filed on September 2, 2014, and the answer of the debtor, Pamela Drummond, filed on September 11, 2014. The Court held a trial on the merits on April 9, 2014, and, at the conclusion of trial, took the matter under advisement. For the reasons stated below, the Court grants SSA's complaint.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The fol-

lowing opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

The debtor did not appear at the April 9 trial. However, the Court is able to make the following findings of fact based on the debtor's admitted answers to SSA's complaint, the documents introduced at trial, and the testimony of an SSA representative. The debtor applied for SSA disability benefits on November 6, 2006. In her application, the debtor agreed to notify SSA of certain events including whether the debtor returned to work as an employee or a self-employed person. On May 1, 2007, SSA awarded benefits to the debtor beginning from September 2006. SSA included a pamphlet with the debtor's Notice of Award titled "What You Need To Know When You Get Social Security Disability Benefits." The pamphlet described the debtor's duties in relation to the benefit award, and one of those duties was to inform SSA if she took a job or became self-employed.

On January 9, 2008, the debtor began employment with Heritage Co., Inc. and earned approximately $3500.00 between January 9 and May 5, 2008, at which time her employment ended. On October 6, 2008, the debtor began employment at Central Arkansas Transit Authority [CATA], According to the debtor's sworn statement,[1] after she obtained employment with CATA, she "attempted to have the SSA terminate my benefits by contacting the Sherwood, AR office. Upon moving to Conway, AR in 2009, I again attempted to report this information to the Conway office." The debtor continued to receive the SSA benefits and acknowledged that she

1. The debtor's sworn statement was given to Charles Briscoe, special agent of the Office of Inspector General, SSA, on June 13, 2012.

"spent the funds while employed and ineligible." Although SSA has a record of receiving two calls from the debtor regarding matters unrelated to the debtor's employment status, it has no record of either attempted contact the debtor alleges she made after she obtained employment. The debtor admits in her answer to SSA's complaint that as a result of the debtor's *failure to report her work activity,* SSA overpaid the debtor $18,568.00 in SSA disability benefits.[2]

The SSA brought its complaint under 11 U.S.C. § 523(a)(2)(A), which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

 To prevail, SSA must prove by a preponderance of the evidence that (1) the debtor made a representation, (2) the debtor knew the representation was false at the time it was made, (3) the debtor made the representation for the purpose of deceiving SSA, (4) SSA justifiably relied on the representation, and (5) SSA sustained the alleged loss as the proximate result of the representation. *R & R Ready Mix v. Freier (In re Freier),* 604 F.3d 583, 587 (8th Cir.2010); *United States v. Pipkin (In re Pipkin),* 495 B.R. 878, 880 (Bankr.

W.D.Ark.2013). According to the Eighth Circuit Bankruptcy Appellate Panel, a "false pretense"

"involves implied misrepresentation or conduct intended to create and foster a false impression." *In re Guy,* 101 B.R. 961, 978 (Bankr.N.D.Ind.1988). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *In re Malcolm,* 145 B.R. 259, 263 (Bankr.N.D.Ill.1992) (citing *In re Dunston,* 117 B.R. 632, 639–41 (Bankr.D.Colo.1990)).

*Merchants Nat'l Bank v. Moen (In re Moen),* 238 B.R. 785, 791 (8th Cir. BAP 1999). False pretense can also consist of "'silence when there is a duty to speak.'" *Check Control, Inc. v. Anderson (In re Anderson),* 181 B.R. 943 (Bankr.D.Minn. 1995) (quoting *In re Dunston,* 117 B.R. 632, 641 (Bankr.D.Colo.1990); *In re Pipkin,* 495 B.R. at 880. The third element— an intent to deceive—may be inferred when a debtor makes a false representation and knows or should have known that the representation will induce another to act. *In re Moen,* 238 B.R. at 791 (citing *In re Duggan,* 169 B.R. 318, 324 (Bankr. E.D.N.Y.1994)).

 In the case before the Court, the debtor had a duty to notify SSA if she went to work, "whether as an employee or a self-employed person." Additionally, the debtor's Notice of Award letter advised the debtor to "[p]lease be sure to read the parts of the pamphlet which explain what

---

**2.** Paragraph 21 of SSA's complaint states: "As a result of Debtor's failure to report her work activity or earnings, SSA improperly paid Debtor $18,568.00 in Social Security dis-

ability benefits." The debtor specifically admitted paragraph 21 in her answer to the complaint.

to do if you go to work or if your health improves." Finally, the pamphlet itself states that "[i]t is important to notify us promptly—either in person, by phone or by mail-whenever a change occurs that could affect your benefits" and "[y]ou should tell us if you take a job or become self-employed, no matter how little you earn."

The debtor's requirement to notify SSA if she returned to work is the representation-or lack thereof—that forms the pretense under § 523(a)(2)(A).[3] Although the debtor may have "attempted" to report her employment, the debtor admits and the Court finds that she did not notify SSA of her job with either Heritage Co., Inc. or CATA. As a result of the debtor's failure to report her return to work, the Court finds that the debtor made a representation under false pretenses with the intent to deceive SSA. Had the debtor not intended to deceive SSA, she should have disclosed her employment sometime between January 2008, when she became employed, and July 2010, when SSA verified her employment. Hence, the Court finds that SSA has met the first three elements of proof under § 523(a)(2)(A).

SSA has also met the fourth and fifth elements of proof. The SSA representative testified that one of the reasons SSA provides a copy of its pamphlet to disability benefit recipients is because SSA relies on the recipients to inform SSA if and when the individual returns to work. Otherwise, as happened in this case, there could be a delay between the date the benefits should have ended and the date

SSA discovered that the individual returned to work. The debtor admitted that SSA improperly paid her $18,568.00 as a result of the debtor not informing SSA of her return to work. The Court finds that SSA justifiably relied on the debtor to inform it of her return to work and that the lack of notification proximately resulted in the loss of $18,568.00.

The Court finds that SSA proved by a preponderance of the evidence that the debtor obtained $18,568.00 from SSA under false pretenses with the intent to deceive SSA, that SSA justifiably relied on the debtor to provide her employment information, and that SSA sustained a loss of $18,568.00 as the proximate result of the debtor's failure to notify SSA. The Court grants SSA's complaint and finds that the debtor's obligation to repay SSA $18,568.00 is non-dischargeable in the debtor's bankruptcy case. The Court will enter separate judgment in favor of SSA and against the debtor in accordance with Federal Rule of Bankruptcy Procedure 7058.

IT IS SO ORDERED.

---

**3.** The Court finds as a matter of law that the requirement of the debtor to notify SSA if she returns to work is not a statement that respects the debtor's financial condition. Hence, the Court does not have to determine the scope of the exception in § 523(a)(2)(A)- the phrase "other than a statement respecting the debtor's ... financial condition." *See, e.g., In re Bogdanovich*, 292 F.3d 104, 112–13 (2d Cir.2002) (recognizing that courts are "sharply split" over the interpretation of the scope of § 523(a)(2)(A)'s exception).