(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LAMAR, ARCHER & COFRIN, LLP *v.* APPLING

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 16–1215. Argued April 17, 2018—Decided June 4, 2018

Respondent R. Scott Appling fell behind on his bills owed to petitioner law firm Lamar, Archer & Cofrin, LLP, which threatened to withdraw representation and place a lien on its work product if Appling did not pay. Appling told Lamar that he could cover owed and future legal expenses with an expected tax refund, so Lamar agreed to continue representation. However, Appling used the refund, which was for much less than he had stated, for business expenses. When he met with Lamar again, he told the firm he was still waiting on the refund, so Lamar agreed to complete pending litigation. Appling never paid the final invoice, so Lamar sued him and obtained a judgment. Shortly thereafter, Appling and his wife filed for Chapter 7 bankruptcy. Lamar initiated an adversary proceeding against Appling in Bankruptcy Court, arguing that his debt to Lamar was nondischargeable pursuant to 11 U. S. C. §523(a)(2)(A), which bars discharge of specified debts arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." Appling moved to dismiss on the ground that his alleged misrepresentations were "statement[s] respecting the debtor's . . . financial condition," which §523(a)(2)(B) requires to be "in writing." The Bankruptcy Court disagreed and denied Appling's motion. Finding that Appling knowingly made two false representations on which Lamar justifiably relied and that Lamar incurred damages as a result, the court concluded that Appling's debt to Lamar was nondischargeable under §523(a)(2)(A). The District Court affirmed, but the Eleventh Circuit reversed, holding that a "statement respecting the debtor's financial condition" may include a statement about a single asset. Because Appling's statements were not in writing, the court held, §523(a)(2)(B) did not bar him from dis-

charging his debt to Lamar.

*Held*: A statement about a single asset can be a "statement respecting the debtor's financial condition" under §523(a)(2). Pp. 4–15.

(a) The key word in the relevant statutory phrase here is the preposition "respecting." In ordinary usage, "respecting" means "concerning; about; regarding; in regard to; relating to." Lamar contends that the definitions "about," "concerning," "with reference to," and "as regards" denote a more limited scope than "related to." And under that more limited meaning, Lamar asserts, a formal financial statement providing a detailed accounting of one's assets and liabilities would qualify as "a statement respecting the debtor's financial condition," but a statement about a single asset would not. But the overlapping and circular definitions of these words belie the clear distinction Lamar attempts to impose. And the firm gives no example of a phrase in a legal context similar to the one at issue here in which toggling between "related to" and "about" has any pertinent significance.

Use of the word "respecting" in a legal context generally has a broadening effect, ensuring that a provision's scope covers not only its subject but also matters relating to that subject. Cf. *Kleppe* v. *New Mexico*, 426 U. S. 529, 539. Indeed, this Court has typically read the phrase "relating to"—one of respecting's meanings—expansively. See, *e.g.*, *Coventry Health Care of Mo., Inc.* v. *Nevils*, 581 U. S. ___, ___. Appling and the United States, as *amicus curiae*, accordingly advance an expansive interpretation here. This Court agrees with them that, given the ordinary meaning of "respecting," Lamar's statutory construction must be rejected, for it reads "respecting" out of the statute. See *TRW Inc.* v. *Andrews*, 534 U. S. 19, 31. Had Congress intended §523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, it could have so specified—*e.g.*, "statement of the debtor's financial condition." The Court also agrees that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about that asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent. A statement about a single asset, thus, can be a "statement respecting the debtor's financial condition." Pp. 5–9.

(b) Lamar's interpretation would yield incoherent results. For instance, on Lamar's view, a misrepresentation about a single asset made in the context of a formal financial statement or balance sheet would constitute a "statement respecting the debtor's financial condition" and trigger §523(a)(2)(B)'s heightened nondischargeability requirements, but the same misrepresentation made on its own, or in

the context of a list of some but not all of the debtor's assets and lia-
bilities, would not. Lamar does not explain why Congress would
draw such seemingly arbitrary distinctions. Pp. 9–10.

(c) The statutory history of the phrase "statement respecting the
debtor's financial condition" corroborates this Court's reading. Be-
tween 1926, when the phrase was introduced, and 1978, when Con-
gress enacted the Bankruptcy Code, Courts of Appeals consistently
construed the phrase to encompass statements addressing just one or
some of a debtor's assets or liabilities. When Congress used the ma-
terially same language in §523(a)(2), it presumptively was aware of
this longstanding judicial interpretation and intended for the phrase
to retain its established meaning. Pp. 10–11.

(d) Lamar's additional arguments are unpersuasive. First, Lamar
contends that Appling's construction gives §523(a)(2)(B) an implausi-
bly broad reach, such that little would be covered by §523(a)(2)(A)'s
general rule rendering nondischargeable debts arising from "false
pretenses, a false representation, or actual fraud." But §523(a)(2)(A)
still retains significant function when the phrase "statement respect-
ing the debtor's financial condition" is interpreted to encompass a
statement about a single asset. See, *e.g., Husky Int'l Electronics, Inc.*
v. *Ritz*, 578 U. S. ___, ___. Second, Lamar asserts that Appling's in-
terpretation is inconsistent with the overall principle that the Bank-
ruptcy Code exists to afford relief only to the "'honest but unfortu-
nate debtor.'" *Cohen* v. *de la Cruz,* 523 U. S. 213, 217. The text of
§523(a)(2), however, plainly heightens the bar to discharge when the
fraud at issue was effectuated via a "statement respecting the debt-
or's financial condition." The heightened requirements, moreover,
are not a shield for dishonest debtors. Rather, they reflect Congress'
effort to balance the potential misuse of such statements by both
debtors and creditors. See *Field* v. *Mans*, 516 U. S. 59, 76–77.
Pp. 12–15.

848 F. 3d 953, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, GINSBURG, BREYER, and KAGAN, JJ., joined, and in
which THOMAS, ALITO, and GORSUCH, JJ., joined as to all but Part III–B.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 16–1215
_____

## LAMAR, ARCHER & COFRIN, LLP, PETITIONER *v.* R. SCOTT APPLING

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 4, 2018]

JUSTICE SOTOMAYOR delivered the opinion of the Court.*

The Bankruptcy Code prohibits debtors from discharg-
ing debts for money, property, services, or credit obtained
by "false pretenses, a false representation, or actual
fraud," 11 U. S. C. §523(a)(2)(A), or, if made in writing, by
a materially false "statement . . . respecting the debtor's
. . . financial condition," §523(a)(2)(B).

This case is about what constitutes a "statement re-
specting the debtor's financial condition." Does a state-
ment about a single asset qualify, or must the statement
be about the debtor's overall financial status? The answer
matters to the parties because the false statements at
issue concerned a single asset and were made orally. So, if
the single-asset statements here qualify as "respecting the
debtor's financial condition," §523(a)(2)(B) poses no bar to
discharge because they were not made in writing. If,
however, the statements fall into the more general category
of "false pretenses, . . . false representation, or actual
fraud," §523(a)(2)(A), for which there is no writing

——————
*JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE GORSUCH join all but
Part III–B of this opinion.

requirement, the associated debt will be deemed nondischargeable.

The statutory language makes plain that a statement about a single asset can be a "statement respecting the debtor's financial condition." If that statement is not in writing, then, the associated debt may be discharged, even if the statement was false.

I

Respondent R. Scott Appling hired petitioner Lamar, Archer & Cofrin, LLP (Lamar), a law firm, to represent him in a business litigation. Appling fell behind on his legal bills, and by March 2005, he owed Lamar more than $60,000. Lamar informed Appling that if he did not pay the outstanding amount, the firm would withdraw from representation and place a lien on its work product until the bill was paid. The parties met in person that month, and Appling told his attorneys that he was expecting a tax refund of "'approximately $100,000,'" enough to cover his owed and future legal fees. App. to Pet. for Cert. 3a. Lamar relied on this statement and continued to represent Appling without initiating collection of the overdue amount.

When Appling and his wife filed their tax return, however, the refund they requested was of just $60,718, and they ultimately received $59,851 in October 2005. Rather than paying Lamar, they spent the money on their business.

Appling and his attorneys met again in November 2005, and Appling told them that he had not yet received the refund. Lamar relied on that statement and agreed to complete the pending litigation and delay collection of the outstanding fees.

In March 2006, Lamar sent Appling its final invoice. Five years later, Appling still had not paid, so Lamar filed suit in Georgia state court and obtained a judgment for

$104,179.60. Shortly thereafter, Appling and his wife filed for Chapter 7 bankruptcy.

Lamar initiated an adversary proceeding against Appling in Bankruptcy Court for the Middle District of Georgia. The firm argued that because Appling made fraudulent statements about his tax refund at the March and November 2005 meetings, his debt to Lamar was nondischargeable pursuant to 11 U. S. C. §523(a)(2)(A), which governs debts arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." Appling, in turn, moved to dismiss, contending that his alleged misrepresentations were "statement[s] . . . respecting [his] financial condition" and were therefore governed by §523(a)(2)(B), such that Lamar could not block discharge of the debt because the statements were not "in writing" as required for nondischargeability under that provision.

The Bankruptcy Court held that a statement regarding a single asset is not a "statement respecting the debtor's financial condition" and denied Appling's motion to dismiss. 500 B. R. 246, 252 (MD Ga. 2013). After a trial, the Bankruptcy Court found that Appling knowingly made two false representations on which Lamar justifiably relied and that Lamar incurred damages as a result. It thus concluded that Appling's debt to Lamar was nondischargeable under §523(a)(2)(A). 527 B. R. 545, 550–556 (MD Ga. 2015). The District Court affirmed. 2016 WL 1183128 (MD Ga., Mar. 28, 2016).

The Court of Appeals for the Eleventh Circuit reversed. It held that "'statement[s] respecting the debtor's . . . financial condition' may include a statement about a single asset." *In re Appling*, 848 F. 3d 953, 960 (2017). Because Appling's statements about his expected tax refund were not in writing, the Court of Appeals held that §523(a)(2)(B) did not bar Appling from discharging his debt to Lamar. *Id.,* at 961.

The Court granted certiorari, 583 U. S. ___ (2018), to resolve a conflict among the Courts of Appeals as to whether a statement about a single asset can be a "statement respecting the debtor's financial condition."[1]  We agree with the Eleventh Circuit's conclusion and affirm.

## II
## A

One of the "main purpose[s]" of the federal bankruptcy system is "to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character." *Stellwagen* v. *Clum*, 245 U. S. 605, 617 (1918). To that end, the Bankruptcy Code contains broad provisions for the discharge of debts, subject to exceptions.  One such exception is found in 11 U. S. C. §523(a)(2), which provides that a discharge under Chapter 7, 11, 12, or 13 of the Bankruptcy Code "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by" fraud.  This exception is in keeping with the "basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen* v. *de la Cruz*, 523 U. S. 213, 217 (1998).

More specifically, §523(a)(2) excepts from discharge debts arising from various forms of fraud.  Subparagraph (A) bars discharge of debts arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." Subparagraph (B), in turn, bars discharge of debts arising from a materially false "statement . . . respecting the

---

[1] Compare *In re Bandi*, 683 F. 3d 671, 676 (CA5 2012) (a statement about a single asset is not a statement respecting the debtor's financial condition); *In re Joelson*, 427 F. 3d 700, 714 (CA10 2005) (same), with *In re Appling*, 848 F. 3d 958, 960 (CA11 2017) (a statement about a single asset can be a statement respecting the debtor's financial condition); *Engler* v. *Van Steinburg*, 744 F. 2d 1060, 1061 (CA4 1984) (same).

debtor's . . . financial condition" if that statement is "in writing."

## B

### 1

"Our interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom* v. *FIA Card Services, N. A.*, 562 U. S. 61, 69 (2011). As noted, the relevant statutory text is the phrase "statement respecting the debtor's financial condition." Because the Bankruptcy Code does not define the words "statement," "financial condition," or "respecting," we look to their ordinary meanings. See *ibid.*

There is no dispute as to the meaning of the first two terms. A "statement" is "the act or process of stating, reciting, or presenting orally or on paper; something stated as a report or narrative; a single declaration or remark." Webster's Third New International Dictionary 2229 (1976) (Webster's). As to "financial condition," the parties agree, as does the United States, that the term means one's overall financial status. See Brief for Petitioner 23; Brief for Respondent 25; Brief for United States as *Amicus Curiae* 12.

For our purposes, then, the key word in the statutory phrase is the preposition "respecting," which joins together "statement" and "financial condition." As a matter of ordinary usage, "respecting" means "in view of: considering; with regard or relation to: regarding; concerning." Webster's 1934; see also American Heritage Dictionary 1107 (1969) ("[i]n relation to; concerning"); Random House Dictionary of the English Language 1221 (1966) ("regarding; concerning"); Webster's New Twentieth Century Dictionary 1542 (2d ed. 1967) ("concerning; about; regarding; in regard to; relating to").

According to Lamar, these definitions reveal that "'respecting' *can* be 'defined broadly,'" but that the word "isn't

always used that way." Brief for Petitioner 27. The firm contends that "'about,'" "'concerning,'" "'with reference to,'" and "'as regards'" denote a more limited scope than "'related to.'" Brief for Petitioner 3, 18, 27. When "respecting" is understood to have one of these more limited meanings, Lamar asserts, a "statement respecting the debtor's financial condition" is "a statement that is 'about,' or that makes 'reference to,' the debtor's overall financial state or well-being." *Id.*, at 27–28. Under that formulation, a formal financial statement providing a detailed accounting of one's assets and liabilities would qualify, as would statements like "'Don't worry, I am above water,'" and "'I am in good financial shape.'" *Id.*, at 19, 28. A statement about a single asset would not.

The Court finds no basis to conclude, however, at least in this context, that "related to" has a materially different meaning than "about," "concerning," "with reference to," and "as regards." The definitions of these words are overlapping and circular, with each one pointing to another in the group. "Relate" means "to be in relationship: have reference," and, in the context of the phrase "in relation to," "reference, respect." Webster's 1916; see also *id.,* at 18a (Explanatory Note 16.2). "About" means "with regard to," and is the equivalent of "concerning." *Id.,* at 5. "Concerning" means "relating to," and is the equivalent of "regarding, respecting, about." *Id.,* at 470. "Reference" means "the capability or character of alluding to or bearing on or directing attention to something," and is the equivalent of "relation" and "respect." *Id.,* at 1907. And "regard" means "to have relation to or bearing upon: relate to," and is the equivalent of "relation" and "respect." *Id.,* at 1911. The interconnected web formed by these words belies the clear distinction Lamar attempts to impose. Lamar also fails to put forth an example of a phrase in a legal context similar to the one at issue here in which toggling between "related to" and "about" has any perti-

nent significance.

Use of the word "respecting" in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject. Cf. *Kleppe* v. *New Mexico*, 426 U. S. 529, 539 (1976) (explaining that the Property Clause, "in broad terms, gives Congress the power to determine what are 'needful' rules 'respecting' the public lands," and should receive an "expansive reading").

Indeed, when asked to interpret statutory language including the phrase "relating to," which is one of the meanings of "respecting," this Court has typically read the relevant text expansively. See, *e.g., Coventry Health Care of Mo., Inc.* v. *Nevils*, 581 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 7) (describing "'relate to'" as "expansive" and noting that "Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates"); *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 378–390 (1992) (explaining that "'relating to'" has a "broad" ordinary meaning and accordingly holding that the Airline Deregulation Act of 1978 provision prohibiting the States from enforcing any law "'relating to rates, routes, or services'" of any air carrier pre-empted any fare advertising guidelines that "would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge"); *Ingersoll-Rand Co.* v. *McClendon*, 498 U. S. 133, 139 (1990) ("'A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan . . . even if the law is not specifically designed to affect such plans, or the effect is only indirect" (citation omitted)).

Advancing that same expansive approach here, Appling contends that a "statement respecting the debtor's finan-

cial condition" is "a statement that has a direct relation to, or impact on the balance of all of the debtor's assets and liabilities or the debtor's overall financial status." Brief for Respondent 17 (internal quotation marks and citations omitted). "A debtor's statement describing an individual asset or liability necessarily qualifies," Appling explains, because it "has a direct impact on the *sum* of his assets and liabilities." *Ibid.* "Put differently, a debtor's statement that describes the existence or value of a constituent element of the debtor's balance sheet or income statement qualifies as a 'statement respecting financial condition.'" *Ibid.*

The United States as *amicus curiae* supporting Appling offers a slightly different formulation. In its view, a "statement respecting the debtor's financial condition" includes "a representation about a debtor's asset that is offered as evidence of ability to pay." Brief for United States as *Amicus Curiae* 11. Although Appling does not include "ability to pay" in his proffered definition, he and the United States agree that their respective formulations are functionally the same and lead to the same results. See Tr. of Oral Arg. 50–52, 58. That is so because to establish the requisite materiality and reliance, a creditor opposing discharge must explain why it viewed the debtor's false representation as relevant to the decision to extend money, property, services, or credit. If a given statement did not actually serve as evidence of ability to pay, the creditor's explanation will not suffice to bar discharge. But if the creditor proves materiality and reliance, it will be clear the statement was one "respecting the debtor's financial condition." Whether a statement about a single asset served as evidence of ability to pay thus ultimately always factors into the §523(a)(2) inquiry at some point.

We agree with both Appling and the United States that, given the ordinary meaning of "respecting," Lamar's preferred statutory construction—that a "statement respecting

the debtor's financial condition" means only a statement that captures the debtor's overall financial status—must be rejected, for it reads "respecting" out of the statute. See *TRW Inc.* v. *Andrews*, 534 U. S. 19, 31 (2001) ("[A] statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant" (internal quotation marks omitted)). Had Congress intended §523(a)(2)(B) to encompass only statements expressing the balance of a debtor's assets and liabilities, there are several ways in which it could have so specified, *e.g.,* "statement disclosing the debtor's financial condition" or "statement of the debtor's financial condition."[2] But Congress did not use such narrow language.

We also agree that a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not. Naturally, then, a statement about a single asset can be a "statement respecting the debtor's financial condition."

2

Further supporting the Court's conclusion is that Lamar's interpretation would yield incoherent results. On Lamar's view, the following would obtain: A misrepresentation about a single asset made in the context of a formal financial statement or balance sheet would constitute a "statement respecting the debtor's financial condition" and

—————

[2] Congress in fact used just such "statement of" language elsewhere in the Bankruptcy Code. See, *e.g.,* 11 U. S. C. §329(a) ("statement of the compensation paid"); §521(a)(1)(B)(iii) ("statement of the debtor's financial affairs"); §707(b)(2)(C) ("statement of the debtor's current monthly income").

trigger §523(a)(2)(B)'s heightened nondischargeability requirements, but the exact same misrepresentation made on its own, or in the context of a list of some but not all of the debtor's assets and liabilities, would not.  Lamar does not explain why Congress would draw such seemingly arbitrary distinctions, where the ability to discharge a debt turns on the superficial packaging of a statement rather than its substantive content.

In addition, a highly general statement like, "I am above water," would need to be in writing to foreclose discharge, whereas a highly specific statement like, "I have $200,000 of equity in my house," would not.  This, too, is inexplicably bizarre.

3

Lastly, the statutory history of the phrase "statement respecting the debtor's financial condition" corroborates our reading of the text.  That language can be traced back to a 1926 amendment to the Bankruptcy Act of 1898 that prohibited discharge entirely to a debtor who had "obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing respecting his financial condition."   Act of May 27, 1926, §6, 44 Stat. 663–664.

When Congress again amended this provision in 1960, it retained the "statement in writing respecting . . . financial condition" language.  See Act of July 12, 1960, Pub. L. 86–621, §2, 74 Stat. 409.  Congress then once more preserved that language when it rewrote and recodified the provision in the modern Bankruptcy Code as §523(a)(2)(B).

Given the historical presence of the phrase "statement respecting the debtor's financial condition," lower courts had ample opportunity to weigh in on its meaning.  Between 1926, when the phrase was introduced, and 1978,

when Congress enacted the Bankruptcy Code, Courts of Appeals consistently construed the phrase to encompass statements addressing just one or some of a debtor's assets or liabilities.[3] When Congress used the materially same language in §523(a)(2), it presumptively was aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning. See *Lorillard* v. *Pons*, 434 U. S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change"); *Bragdon* v. *Abbott*, 524 U. S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well").

————————

[3] See, *e.g., Tenn* v. *First Hawaiian Bank*, 549 F. 2d 1356, 1358 (CA9 1977) (*per curiam*) ("[A]ppellants' recordation of the deed which they knew was false for the purpose of obtaining an extension of credit on the basis of an asset that they did not own was a false statement of financial condition" (citing *Scott* v. *Smith*, 232 F. 2d 188, 190 (CA9 1956))); *In re Butler*, 425 F. 2d 47, 49, 52 (CA3 1970) (affirming holding that a corporation's false statements as to select accounts receivable qualified as statements respecting financial condition); *Shainman* v. *Shear's of Affton, Inc.*, 387 F. 2d 33, 38 (CA8 1967) ("A written statement purporting to set forth the true value of a major asset of a corporation, its inventory, is a statement respecting the financial condition of that corporation. . . . There is nothing in the language or legislative history of this section of the [Bankruptcy] Act to indicate that it was intended to apply only to complete financial statements in the accounting sense"); *Albinak* v. *Kuhn*, 149 F. 2d 108, 110 (CA6 1945) ("No cases have been cited to us, and none has been found by careful examination, which confines a statement respecting one's financial condition as limited to a detailed statement of assets and liabilities"); *In re Weiner*, 103 F. 2d 421, 423 (CA2 1939) (holding that a debtor's false statement about "an asset" that was pledged as collateral was a statement respecting financial condition).

## III

In addition to its plain-text arguments discussed and rejected above, see *supra,* at 5–7, Lamar contends that Appling's rule undermines the purpose of §523(a)(2) in two ways. Neither argument is persuasive.

## A

First, Lamar contends that Appling's construction gives §523(a)(2)(B) an implausibly broad reach, such that little would be covered by §523(a)(2)(A)'s general rule rendering nondischargeable debts arising from "false pretenses, a false representation, or actual fraud." That is not so. Decisions from this Court and several lower courts considering the application of §523(a)(2)(A) demonstrate that the provision still retains significant function when the phrase "statement respecting the debtor's financial condition" is interpreted to encompass a statement about a single asset.

Section 523(a)(2)(A) has been applied when a debt arises from "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Electronics, Inc.* v. *Ritz*, 578 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 3).[4] It also has been used to bar the discharge of debts resulting from misrepresentations about the value of goods, property, and services.[5]

—————

[4] See also, *e.g., In re Tucker*, 539 B. R. 861, 868 (Bkrtcy. Ct. Idaho 2015) (holding nondischargeable under §523(a)(2)(A) a debt arising from the overpayment of social security disability benefits to an individual who failed to report changes to his employment despite a legal duty to do so); *In re Drummond*, 530 B. R. 707, 710, and n. 3 (Bkrtcy. Ct. ED Ark. 2015) (same, and concluding that "the requirement of the debtor to notify [the Social Security Administration] if she returns to work is not a statement that respects the debtor's financial condition").

[5] See, *e.g., In re Bocchino*, 794 F. 3d 376, 380–383 (CA3 2015) (holding nondischargeable under §523(a)(2)(A) civil judgment debts against a debtor-stockbroker who made misrepresentations about investments); *In re Cohen*, 106 F. 3d 52, 54–55 (CA3 1997) (holding that a landlord's misrepresentations about the rent that legally could be charged for an

B

Second, Lamar asserts that Appling's interpretation is inconsistent with the overall principle that the Bankruptcy Code exists to afford relief only to the "'honest but unfortunate debtor,'" *Cohen*, 523 U. S., at 217, because it leaves "fraudsters" free to "swindle innocent victims for money, property or services by lying about their finances, then discharge the resulting debt in bankruptcy, just so long as they do so orally." Brief for Petitioner 35.

This general maxim, however, provides little support for Lamar's interpretation. The text of §523(a)(2) plainly heightens the bar to discharge when the fraud at issue was effectuated via a "statement respecting the debtor's financial condition."[6] The heightened requirements, moreover, are not a shield for dishonest debtors. Rather, they reflect Congress' effort to balance the potential misuse of such statements by both debtors and creditors. As the Court has explained previously:

> "The House Report on the [Bankruptcy Reform Act of 1978] suggests that Congress wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than others, but because the relative equities might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from dis-

———————

apartment constituted fraud under §523(a)(2)(A)); *United States* v. *Spicer*, 57 F. 3d 1152, 1154, 1161 (CADC 1995) (holding nondischargeable under §523(a)(2)(A) a settlement agreement owed to the Government based on an investor's misrepresentations of downpayment amounts in mortgage applications).

[6] In addition to the writing requirement, §523(a)(2)(B) requires a creditor to show reasonable reliance. 11 U. S. C. §523(a)(2)(B)(iii). Section 523(a)(2)(A), by contrast, requires only the lesser showing of "justifiable reliance." *Field* v. *Mans*, 516 U. S. 59, 61, 70–75 (1995).

charge." *Field* v. *Mans*, 516 U. S. 59, 76–77 (1995).

Specifically, as detailed in *Field*, the House Report noted that consumer finance companies frequently collected information from loan applicants in ways designed to permit the companies to later use those statements as the basis for an exception to discharge. Commonly, a loan officer would instruct a loan applicant "'to list only a few or only the most important of his debts'" on a form with too little space to supply a complete list of debts, even though the phrase, "'I have no other debts,'" would be printed at the bottom of the form or the applicant would be "'instructed to write the phrase in his own handwriting.'" *Id.*, at 77, n. 13. If the debtor later filed for bankruptcy, the creditor would contend that the debtor had made misrepresentations in his loan application and the creditor would threaten litigation over excepting the debt from discharge. That threat was "often enough to induce the debtor to settle for a reduced sum," even where the merits of the nondischargeability claim were weak. H. R. Rep. No. 95–595, p. 131 (1977).

Notably, Lamar's interpretation of "statement respecting the debtor's financial condition" would not bring within §523(a)(2)(B)'s reach the very types of statements the House Report described, because those debts-only statements said nothing about assets and thus did not communicate fully the debtor's overall financial status. Yet in *Field*, the Court explained that the heightened requirements for nondischargeability under §523(a)(2)(B) were intended to address creditor abuse involving such statements. 516 U. S., at 76–77. Lamar's construction also would render §523(a)(2)(B) subject to manipulation by creditors, frustrating the very end Congress sought to avoid when it set forth heightened requirements for rendering nondischargeable "statements respecting the debtor's financial condition." *Ibid.*

Finally, although Lamar tries to paint a picture of defenseless creditors swindled by lying debtors careful to make their financial representations orally, creditors are not powerless. They can still benefit from the protection of §523(a)(2)(B) so long as they insist that the representations respecting the debtor's financial condition on which they rely in extending money, property, services, or credit are made in writing. Doing so will likely redound to their benefit, as such writings can foster accuracy at the outset of a transaction, reduce the incidence of fraud, and facilitate the more predictable, fair, and efficient resolution of any subsequent dispute.

## IV

For the foregoing reasons, the Court holds that a statement about a single asset can be a "statement respecting the debtor's financial condition" under §523(a)(2) of the Bankruptcy Code. The judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

*It is so ordered.*