**In re Robert S. HARDY, Debtor.**

**No. 9:04–BK–943–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

July 15, 2004.

Louis X. Amato, Louis X. Amato, PA, Naples, FL, Louis D. D'Agostino, C/O Cheffy, Passidomo, Wilson & Johns, Naples, FL, John P. Harllee, Harllee & Bald, PA, Bradenton, FL, Barbara A. Hart, Ruden McClosky, St Petersburg, FL, Jeffrey W. Leasure, Jeffrey W. Leasure, PA, Fort Myers, FL, Asher Rabinowitz, Ruden McClosky, Tampa, FL, for Creditors.

Jordi Guso, Berger Singerman, P.A., Miami, FL, Arthur J. Spector, Berger Singerman, Fort Lauderdale, FL, for trustee.

Richard J. Hollander, Edward R. Miller, Miller & Hollander, Naples, FL, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, United States Trustee.

### ORDER ON MOTION FOR THE APPOINTMENT OF A TRUSTEE OR EXAMINER

ALEXANDER L. PASKAY, Bankruptcy Judge.

The matter under consideration is a Motion for the Appointment of a Trustee or Examiner, in the Chapter 11 case of Robert S. Hardy (Debtor). The Motion is filed by Earl St. John (St.John) and is based on the contention that based upon the Debtor's pre-filing conduct, his involvement with another Chapter 11 case which is now converted to a Chapter 7 case, it is clear that the Debtor is ill-suited to honestly and appropriately perform the fiduciary duties of a debtor-in-possession. St. John further asserts that it is appropriate to appoint a trustee or examiner especially since the Debtor has in the past and still has an ongoing modus operandi, which involves fraudulent transfers among family members and thirty-seven affiliates controlled by the Debtor, none of them subject to the control of this Court.

Ordinarily, the issues raised by the Motion requires an evidentiary hearing in light of the plethora of serious allegations raised by St. John to require him to establish by competent proof the allegations set forth in the Motion. However in the present instance, counsel for St. John contends that the relevant facts to support the Motion cannot be disputed and are more than sufficient to grant the relief sought based on the cold record. In this connection, St. John relies primarily on the Debtor's testimony given at the Section 341 meeting, the transcript of which is attached to the Motion as an exhibit as well as the Debtor's Schedules and Statement of Financial Affairs.

While this Court may take judicial notice of the documents filed by the Debtor, if requested, the Section 341 meeting is a horse of the different color. The testimony at a Section 341 meeting is not part of the record of a Chapter 11 case and its admissibility as substantive as distinguished from rebuttal or impeachment tool, is not without doubt. While the testimony of a debtor is under oath, there is no opportunity to offer defenses or to cross-examine or present witnesses in an attempt to explain or clarify the direct testimony of the debtor. Notwithstanding, counsel for St. John contends that the rule in this Circuit is in favor of the admissibility of a debtor's testimony, citing for this proposition the case of *In re Jost*, 136 F.3d 1455 (11th Cir.1998).

The primary issue on appeal in *Jost* was not the admissibility into evidence the Debtor's testimony given at the 341 meeting of creditors or at a 2004 examination, but the right of a creditor to challenge the Debtor's homestead claim under Art. X Sec. 4 of the Florida Constitution, based on the contention that the homestead was acquired by the debtor through a conversion of exempt property with actual intent to hinder delay or defraud creditors in violation of Fla. Stat. § 223.30. While it is true that the Court of Appeals for the 11th Circuit made a comment on the failure of the bankruptcy court consider the debtor's Section 341 meeting testimony and stated that remand was appropriate because the bankruptcy court failed to make the required findings of fact on the issue of actual intent, the Court of Appeals also stated that even if such finding has been made, remand was necessary because of the failure to admit the Section 341 meeting testimony of the debtor was an error. In *Jost*, this point was conceded by Jost. Be as it may, this Court is constrained to

adopt the position of this Circuit on this point and will consider the testimony of the Debtor given at the Section 341 Meeting of Creditors.

■ This testimony conclusively established the following facts relevant to the issues raised by St. John in his Motion and his right to the relief sought, e.g. the appointment of a trustee or an examiner pursuant to Section 1104 of the Code. The Debtor, an individual, is ostensible not engaged in the operation of any business. In his initial monthly reports, he states that he has no income and no expenses of any type such as food, utilities, transportation, or any other expenses normally incurred by an adult individual. Yet during the same period, the Debtor made a two-week trip to Australia to visit his ranch holding.

It is without dispute that the Debtor is a part owner of a 75–acre cattle ranch, currently leased out to an entity named Naples Road Building, a Florida Corporation admittedly wholly owned by the Debtor. Naples Road Building is using the land for grazing a heard of 800 to 900 head of cattle. Naples Road Building pays only the annual taxes to the local government and makes no lease payments to the Debtor. There are no written records of this so-called lease nor are there any documentations indicating the profitability of this operation. Naples Road Building also operates a much larger ranch not owned by the Debtor, which is approximately 300 acres in size and is used for grazing three thousand head of cattle.

The Debtor has either alone or jointly with his wife or with his son, an interest in thirty-seven affiliated entities. He maintains a bank account in the Third Fifth Bank, although this account is only used to pool all funds from the affiliates and then used to move funds to an affiliate as it is needed by one of them. One of the affiliates, a Canadian Corporation named R.S.

HARDY Enterprises Brookville Ltd., maintains a bank account in the Bank of Montreal. It has no employees, conducts no business, but has $600,000 on the account received from the Florida bank account of the Debtor, which received it from an offshore account apparently also controlled by the Debtor. These funds are used to pay two or three former employees described by the Debtor as compensation as "superannuation." It is without dispute that none of these annuitants perform any services for the Debtor or for the affiliates controlled by the Debtor. None of the transfers of funds with the exception of the $600,000 transferred to Canada are documented and apparently have left no paper trail. Currently there is nothing available to determine neither the source of the funds deposited in the "sweep" account maintained by the Debtor nor the identity of the recipients of the funds. During the year 2003, these transfers were estimated to be between two to four million dollars.

Illustrative of these complex and intricate transfers is a 150–foot yacht, which was ultimately seized and sold at a foreclosure. On paper, the Yacht was owned by a Cayman corporation, which in turn was owned by a Delaware corporation, which was owned by Naples Road Building, which is wholly owned by the Debtor.

The Schedules filed by the Debtor also fall short of the full disclosure required by the Code. The Debtor failed to fully disclose all the transfers of funds, source of his funds, and his interest in membership of two country clubs. For instance, the Debtor acquired an option to purchase a tract of land. The option was sold to an entity controlled by David Brennan. The Debtor received five or five hundred and fifty thousand dollars, which he then transferred to Naples Road Building. There are no documents for the exchange of funds between the Debtor and Naples

Road Building, and it is impossible to tell whether this was a repayment of a loan or a capital investment.

Ordinarily, based on the foregoing one might not hesitate to conclude that this case is the paradigm and poster child case that cries for the urgent need to appoint a trustee and remove the debtor from the management of his affairs. However, this Debtor is not operating any business and therefore, there is no need for new management. But, it is without question that there is a need for a thorough and in-depth pervasive investigation by an examiner to untangle these intricate and complicated affairs of this Debtor.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Motion for the Appointment of a Trustee or Examiner be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DE-CREED that the United States Trustee is directed to appoint a Chapter 11 examiner pursuant to 11 U.S.C. § 1104 to examine the Debtor's dealings as set forth above, including the examiner's duties as set forth in 11 U.S.C. § 1106(b). The examiner shall file a report of the examiner's investigation within forty-five (45) days of the date upon which the examiner is appointed.