**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    OR-18-1286-KuFS |
| ANTOINETTE MICHELLE MAXWELL, | Bk. No.     3:17-bk-32084-DWH |
| Debtor. | Adv. No.   3:17-ap-03113-DWH |
| ANTOINETTE MICHELLE MAXWELL, | |
| Appellant, | |
| v. | **OPINION** |
| STATE OF OREGON, | |
| Appellee. | |

Argued and Submitted on March 20, 2019
at Portland, Oregon

Filed – March 27, 2019
Ordered Published – April 30, 2019

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable David W. Hercher, Bankruptcy Judge, Presiding

─────────

Appearances:    Michael Fuller argued for appellant Antoinette Michelle
Maxwell; Sander Marcus Hull of Oregon Department of

Justice argued for appellee State of Oregon.

———————

Before: KURTZ, FARIS, and SPRAKER, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

For several years, the State of Oregon (State) gave food stamp and public assistance benefits to debtor, Antoinette Michelle Maxwell, based on earned and unearned income reported in her benefit applications. State later discovered that Ms. Maxwell failed to report all her income and thus received benefits to which she was not entitled.

State filed an adversary proceeding against Ms. Maxwell seeking a determination that the overpayments were nondischargeable under § 523(a)(2).[1] After a trial and supplemental briefing by the parties, the bankruptcy court issued a Letter Opinion finding that § 523(a)(2)(B) applied to State's claim and that all elements of the statute were met. The bankruptcy court entered judgment in favor of State, finding that overpayments totaling $16,288.43 were nondischargeable. This appeal followed. We AFFIRM.

———————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTS

### A.   Prepetition Events

Ms. Maxwell received food stamp benefits from State from February 1, 2009 through May 31, 2013, through the Supplemental Nutrition Assistance Program (SNAP). She also received public assistance benefits from State through the Temporary Assistance for Needy Families program (TANF) from April 22 through September 30, 2009. Finally, from September 1, 2009 through May 31, 2013, Ms. Maxwell received public assistance benefits through the Employment Related Day Care program (ERDC).

During these time periods, Ms. Maxwell had earnings from her employment with Oregon Health & Science University (OHSU) and from her employment as a domestic employee for Martin Meaux. She also received child support payments.

State began an investigation of Ms. Maxwell's income due to a report that she had failed to advise State about a change of circumstances; i.e., that her husband was part of her household. Although there was insufficient evidence to confirm that her husband was part of her household, the investigation revealed that Ms. Maxwell failed to report child support payments and earned income on her benefit applications. In January 2017, State recorded a Distraint Warrant for the balance due from Ms. Maxwell for the overpayment of public assistance benefits in the amount of

3

$16,288.42. This pushed Ms. Maxwell into a chapter 7 bankruptcy in June 2017.

## B.    Bankruptcy Events

### 1.    The Adversary Complaint

State filed an adversary proceeding against Ms. Maxwell seeking to find the overpayment nondischargeable under § 523(a)(2). State alleged that Ms. Maxwell had a duty to accurately report her earnings and her receipt of child support payments while receiving food stamps and public assistance benefits. State further alleged that Ms. Maxwell failed to report her earnings from Mr. Meaux or her child support payments. According to State, this failure constituted material false representations that she had insufficient income with which to meet the needs of her family. Finally, State maintained that it acted in reliance on Ms. Maxwell's false representations by providing her benefits which she was not entitled to receive.

### 2.    State's Trial Memorandum

In its trial memorandum, State argued that § 523(a)(2)(A) applied. State asserted that it justifiably relied on Ms. Maxwell's false representations when it provided her with public assistance benefits. In support, State explained that it provides public assistance benefits to numerous applicants and must rely upon the truth of each applicant's statements in their applications. According to State, its reliance on

4

Ms. Maxwell's false representations was justifiable under the circumstances.

### 3.     The Trial

At the trial, State proceeded to prove its case presumably under § 523(a)(2)(A). State's sole witness was Marisol Carter, an employee with the Department of Human Services, Overpayment Writing Unit. Ms. Carter testified about the department's operations and procedures. As a benefit overpayment specialist, she was familiar with State's policies and procedures for evaluating benefit eligibility for the TANF, SNAP and ERDC programs. Ms. Carter confirmed that the applicants fill out the benefit application, not State, and that they must identify the benefits for which they are applying so that State can determine eligibility. She testified as to how benefits were calculated and the significance of accurately completing applications.

Ms. Carter explained that State calculates the amount of a benefit that an individual is entitled to based on his or her income and the number of household members. Ms. Carter further explained that to qualify for benefits, the household must be under the Countable Income Limit, which is a government-mandated figure. According to Ms. Carter, if the amount of earned income is reported inaccurately to State, the household ends up receiving more benefits than what they are allowed. Ms. Carter also testified about the overpayments made to Ms. Maxwell, and how they were

calculated with respect to TANF and ERDC benefits.

On cross-examination, Ms. Maxwell's attorney, Mr. Fuller, asked Ms. Carter whether she had personal knowledge about whether anyone with State ever actually relied on Ms. Maxwell's representations in her applications when deciding whether to issue her public assistance from 2009 to 2013. Ms. Carter replied "no."

At that point, Mr. Fuller moved for a directed verdict on the grounds that there was no evidence that Ms. Maxwell had the intent to deceive and no evidence showing actual reliance by State on the information Ms. Maxwell provided in her benefit applications.

In response, State's attorney, Mr. Hull, explained that benefit applications asked for unearned income from any source, including child support, and for earned income. Mr. Hull stated that the applicants sign the document under penalty of perjury that they are providing accurate information. According to Mr. Hull, it was reasonable for State, under the circumstances, to rely on individuals telling the truth on the applications. Mr. Hull further argued that it was clear from the reports generated, and the information that State had collected, that Ms. Maxwell knew enough about the application process. She put information about her employment income from OHSU, but did not put down information about income from Mr. Meaux or her child support payments. From State's perspective, Mr. Hull argued, the only reasonable conclusion was that Ms. Maxwell

intended to keep this information from State so that she could increase her benefits.

In reply, Mr. Fuller argued that there was no evidence showing that State reviewed any of the documents submitted by Ms. Maxwell, which suggested that State gave benefits without regard to anything in the applications.

The bankruptcy court denied the motion for a directed verdict, finding that there was enough evidence for it to infer that State relied on the information in Ms. Maxwell's applications and the absence of information.

Ms. Maxwell subsequently testified and was cross-examined. She testified that she was a domestic employee for Mr. Meaux and earned about a couple hundred dollars a month, but was not sure of the exact amount. On cross examination, Mr. Hull asked her why she did not list income from Mr. Meaux on one of her applications. Ms. Maxwell answered: "I don't know. I don't remember. To my knowledge, I forgot to put it down. It wasn't intentionally." Later, when asked why she did not list the child support payments and income from Mr. Meaux, Ms. Maxwell testified: "Because, at the time, I forgot about the second income." Ms. Maxwell also testified that she received letters from State which explained that she did not need to report all her income if it was below a certain level. She could not remember when she received those letters, but

relied upon them since she earned so little.

During closing argument, Mr. Hull maintained that State's reliance on Ms. Maxwell's assertions in her application was "almost" *res ipsa loquitur*. In other words, it was Ms. Maxwell's representations or omissions in her applications that resulted in State paying the money to her. Mr. Hull also walked the bankruptcy court through State's calculations for the overpayments.

In response, Mr. Fuller argued that State was imposing or asking the bankruptcy court to adopt a new rule—*res ipsa loquitur* means that benefits equal reliance. Mr. Fuller maintained that was not the law and reiterated that there was no evidence in the record of reasonable reliance.

The bankruptcy court took the matter under submission.

### 4.    The Supplemental Briefing

The bankruptcy court subsequently held a hearing on the matter due to its questions about the record. The court stated that it had to determine whether every dollar of the alleged overpayment was attributable to § 523(a)(2) fraud. As a result, the bankruptcy court requested State to further explain the legal basis for each of the line items on State's calculations for benefits and explain how the items in the calculation were supported by other items in the record.

Moreover, subsequent to trial, the Supreme Court issued its decision in *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018), which the

8

bankruptcy court interpreted as requiring Ms. Maxwell's omissions in her written applications to be treated as false financial statements under § 523(a)(2)(B). As such, under § 523(a)(2)(B), State had to prove reasonable reliance on Ms. Maxwell's misrepresentations.

In its supplemental brief, State argued that the holding in *Lamar* had no material impact on the instant case. State maintained that Ms. Maxwell conveyed her financial condition through the benefit applications such that under *Lamar*, the benefit applications would be considered written statements for her financial condition because they relate to her overall financial status. State asserted that the elements for a § 523(a)(2)(B) claim were met. Noting that Ms. Maxwell was obligated to provide true and complete information, it contended that she failed to do so by not including employment and income from Mr. Meaux or her child support in every application she signed between January 2009 and January 2013. State argued that the evidence showed she was working for Mr. Meaux for the relevant time periods even though there was no pay advice for certain months.

In addition, State claimed that the elements for a § 523(a)(2)(A) claim had also been met. State noted that nondisclosure of a material fact in the face of a duty to disclose had been held to establish the requisite reliance and causation for actual fraud. *Apte v. Romesh Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319 (9th Cir. 1996). State maintained that Ms. Maxwell

had a duty to disclose all sources of employment and income on her benefit applications and, by failing to do so, committed fraud by omission.

Finally, State attached a line item detail for the calculation of income for each month Ms. Maxwell received food stamps and TANF benefits. In addition, State provided the legal basis for each line item for those benefits. State further explained that income calculations are less exacting under ERDC and set forth the legal basis for such calculations.

Ms. Maxwell's supplemental brief consisted of three pages. She objected to references of data, sources, or calculations not already admitted into evidence at trial and contained in the record. The brief also stated that the *Lamar* decision should not affect the court's analysis in this case because the only statements at issue were Ms. Maxwell's benefit applications, which were indisputably made in writing.

### 5.    The Letter Opinion

On October 18, 2018, the bankruptcy court issued its findings of fact and conclusions of law in a Letter Opinion.

First, the court noted that State had not specified whether it was relying on § 523(a)(2)(A) or (B) in its complaint. The bankruptcy court ultimately found that § 523(a)(2)(B) rather than subsection (A) applied because (1) the misrepresentations on which State relied—nondisclosure of some of Ms. Maxwell's sources of income—had a direct relation to and thus were "respecting" her overall financial status and (2) Ms. Maxwell's

omissions of material information were from a writing respecting her financial condition.

Second, the court found that State had proved all the elements of § 523(a)(2)(B). According to the bankruptcy court, Ms. Maxwell made statements in her benefits applications that were materially false; i.e., she failed to report income from Mr. Meaux and her child support payments. The court found that Ms. Maxwell knew the representations were false. In this regard, the bankruptcy court was not persuaded by her testimony that the income from Mr. Meaux was so small as to be forgettable as her income ranged from $134.28 to $626.65. The court was also not persuaded by her testimony that she "didn't really read the applications" as she properly—but incompletely—completed blanks in her applications disclosing her primary employer and did not testify to any difficulty reading.

The court further found that Ms. Maxwell intended to deceive State as each application included the following statement above the signature line "by signing below I agree that I have given DHS true, correct, and complete information." The court held that she either knew that she had omitted material information from the applications or acted so recklessly as to warrant a finding that she acted fraudulently.

Next, the bankruptcy court determined that State had relied on the representations in her applications by providing benefits to her. The court noted that a logical inference was that State would not provide benefits in

the absence of an application from an apparently eligible person. The bankruptcy court disagreed with Ms. Maxwell's argument that, to prove reliance, State must reconstruct her applications by adding information that should have been included and then calculating the benefits that would have been paid under the corrected applications. The court also disagreed that State's access to a database with information about Ms. Maxwell's employers and child support payments, which it apparently used in investigating her, excused her from truthfully answering application questions about her employment income.

The bankruptcy court further decided that State's reliance was reasonable. The court reached this conclusion based on Ms. Carter's testimony that application forms, systems, and policies that State uses to accept and process benefit applications, and to recover overpayments, are designed to comply with laws, including federal regulations, regulating eligibility for the benefits. In the end, the court found that although Ms. Maxwell questioned State's actual reliance on her benefit applications, she didn't offer any evidence or argument that State's reliance wasn't reasonable.

Finally, the bankruptcy court found that Ms. Maxwell's debt to State proximately resulted from her misrepresentations. The court observed that Ms. Maxwell presented no evidence to contradict State's calculations of the overpayment amounts.

The bankruptcy court entered judgment in favor of State, finding the overpayments nondischargeable under § 523(a)(2)(B). Ms. Maxwell filed a timely appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether State met its burden of proof by a preponderance of the evidence that it reasonably relied on Ms. Maxwell's written applications for public assistance from 2009 to 2013.

## STANDARD OF REVIEW

Whether a creditor reasonably relied upon false statements is a question of fact which is reviewed under a clearly erroneous standard. *Siriani v. Nw. Nat'l Ins. Co. (In re Siriani)*, 967 F.2d 302, 307 (9th Cir. 1992); *Gosney v. Law (In re Gosney)*, 205 B.R. 418, 421 (9th Cir. BAP 1996). A finding is clearly erroneous if it is "illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)). The clearly erroneous standard does not "entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

## DISCUSSION

### A.     Legal Standards: Reliance Under § 523(a)(2)(B)

To prevail on an exception to discharge claim under § 523(a)(2)(B), the creditor must show, by a preponderance of the evidence, that: (1) it provided debtor with money, property, services or credit based on a written representation of fact by the debtor as to the debtor's financial condition; (2) the representation was materially false; (3) the debtor knew the representation was false when made; (4) the debtor made the representation with the intention of deceiving the creditor; (5) the creditor relied on the representation; (6) the creditor's reliance was reasonable; and (7) damage proximately resulted from the representation. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (setting forth the preponderance of the evidence standard); *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. BAP 1999); *In re Siriani*, 967 F.2d at 304 (adopting the elements required under the companion § 523(a)(2)(A), with the additional and obvious requirement that the alleged fraud stem from a false statement in writing). The bankruptcy court found that State had proven all these elements by a preponderance of the evidence.

On appeal, Ms. Maxwell contests the sufficiency of the evidence on only the reliance requirements. Under § 523(a)(2)(B), the creditor's reliance must be both actual and reasonable. *Heritage Pac. Fin., LLC v. Montano (In re*

*Montano)*, 501 B.R. 96, 115 (9th Cir. BAP 2013) (citing *Field v. Mans*, 516 U.S. 59, 68 (1995)). The determination of reliance therefore requires a two-part analysis. First, the court must determine whether the creditor actually relied on the debtor's statements. Actual reliance means that the creditor in fact relied on the omission or misrepresentation. *Id.; see also First Nat'l Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668, 674 (10th Cir. BAP 2005) ("To establish a claim under § 523(a)(2)(B), the Bank must show reliance in fact, i.e., that it actually relied on the financial information . . . .").

Second, the court must determine whether the creditor's reliance was reasonable. The standard in the Ninth Circuit for "reasonable reliance" does not require adherence to any particular list of factors; rather, the bankruptcy court is to make its determination on a case-by-case basis in light of the totality of the circumstances. *See In re Candland*, 90 F.3d at 1471; *In re Gertsch*, 237 B.R. at 170. A creditor need not necessarily investigate statements respecting a debtor's financial condition in order for its reliance to be reasonable. *In re Gertsch*, 237 B.R. at 170 ("when there is evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on the representations.").

While actual reliance presents a separate issue from a determination of "reasonable reliance," the analysis is an overlapping one. As in the case of any other issue, the fact of reliance may be proved by circumstantial evidence. Evidence that a creditor's reliance was reasonable is

15

circumstantial evidence of actual reliance by the creditor. *Field*, 516 U.S. at 76 ("[T]he greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact."); *N. Tr. Co. v. Garman (In re Garman)*, 643 F.2d 1252 (7th Cir. 1980) (claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact).

In the end, the degree of reliance required—reasonable—is more stringent than the justifiable reliance required under § 523(a)(2)(A), and evidences Congressional intent to create a heightened bar to discharge exceptions. *Lamar*, 138 S. Ct. at 1763. This heightened requirement was not erected to shield dishonest debtors, but to balance the potential misuse by both debtors and creditors of statements reflecting a debtor's financial condition. *Id.* at 1763-64.

## B.   Analysis

At oral argument, Ms. Maxwell's counsel conceded that State had actually relied on her benefit applications when extending her benefits. Therefore, our focus is on whether State's reliance—a factual inquiry—was reasonable in light of the totality of the circumstances.

According to Ms. Maxwell, the record contains no evidence to establish reasonable reliance and it could not be proved in any event since State automatically relied on her benefit applications without any cursory examination or investigation and without caution or prudence. She further contends that State had actual, concurrent knowledge of the source of

16

income it later complained was missing from the written financial statements at issue. According to Ms. Maxwell, State had access to a database which showed her employment and child support payments. Finally, Ms. Maxwell asserts that "some actual evidence of creditor's behavior, of creditor's state of mind, of creditor's actual reliance, of creditor's actual cautiousness or prudence, must be present in the record to satisfy the required element of reasonableness under § 523(a)(2)(B)."

Ms. Maxwell's understanding of what is required to prove reasonable reliance by a preponderance of the evidence is flawed. Although Ms. Maxwell complains that there was no direct evidence of State's reasonable reliance in the record, there are ample facts in the record from which a factfinder may infer that State's reliance on Ms. Maxwell's benefit application was reasonable.

This is not a typical § 523(a)(2)(B) case where a creditor required the debtor to furnish a financial statement as part of the credit transaction. Rather, the reasonableness of State's reliance is properly analyzed in the context of applying for and receiving public assistance benefits, which by its nature, does not form a creditor-debtor relationship at the outset. As noted by the bankruptcy court, the types of governmental-benefit payments at issue in this case are intended for people whose other resources are insufficient to support them or their dependents. It follows that the benefits sought are essential to applicants and their families.

The record shows that to facilitate access to necessary assistance without delay, an applicant completes the benefit application in order to receive the various benefits and signs it under penalty of perjury, testifying that he or she is providing accurate and truthful information. Indeed, one purpose of the benefit application is to provide information to State about the applicant's financial need for benefits.

The import of an applicant's truthfulness on his or her benefit application was explained by Ms. Carter. She testified that eligibility for benefits is based on numerous laws and regulations, and that the income level of an applicant is a significant factor in the calculation of benefits based on government formulas. Further, according to Ms. Carter and State's attorney, Mr. Hull, State takes the applications at face value since the applicant is signing under penalty of perjury.

Considering these facts, the bankruptcy court did not clearly err in finding that it was more likely than not that State's reliance on Ms. Maxwell's benefit applications was reasonable. The essential nature of the benefits at issue, the design of the benefits system, and policies employed by State demonstrate that the benefit application, objectively speaking, amounts to the sort of financial statement that State could reasonably rely upon without further inquiry or verification. In short, the record shows that the benefit-seeking process depends in most instances on the benefit application and the honesty of the applicant, as happened here.

From all appearances, Ms. Maxwell's applications signed under penalty of perjury showed that she was eligible for a certain level of benefits, but that was not true.

The fact that State had access to a database with information about her employers or child support payments does not negate the reasonableness of State's reliance on Ms. Maxwell's benefit applications. Absent patent falsity, or prior knowledge of the falsity of a representation, or circumstances that would have aroused suspicion as to her earned and unearned income in the mind of a reasonable person, State had no duty to affirmatively investigate and determine for itself whether or not the debtor was telling the truth. *In re Gertsch*, 237 B.R. at 170; *cf. Heritage Pac. Fin., LLC v. Machuca (In re Machuca)*, 483 B.R. 726, 737 (9th Cir. BAP 2012) (creditor cannot ignore red flags that directly call into question the truth of statement on which creditor claims to have relied).

Although reasonable reliance is determined on a case-by-case basis for purposes of § 523(a)(2)(B), other courts have similarly found reasonable reliance in this context. *See Cabarrus Cty. v. Boyd (In re Boyd)*, 525 B.R. 299, 306 (Bankr. M.D.N.C. 2015) (finding that programs administered by the County were intended to help struggling families receive assistance and their policy was to presume that customers would complete the forms truthfully); *Colorado v. O'Brien (In re O'Brien)*, 110 B.R. 27, 33 (Bankr. D. Colo. 1990) (noting that an immediate investigation to ensure only truly

eligible persons receive benefits would bog down the system and delay payments to those truly in need).

## CONCLUSION

The bankruptcy court's factual finding of reasonable reliance was plausible and supported by inferences drawn from the facts in the record. Accordingly, we AFFIRM.