

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> VANCE ZACHARY JOHNSON, <br>           Debtor. | BAP No. CC-22-1074-LSG <br><br> Bk. No. 6:18-bk-10939-MH |
| VANCE ZACHARY JOHNSON, <br>           Appellant, <br> v. <br> BANKERS HEALTHCARE GROUP, LLC, <br>           Appellee. | Adv. No. 6:18-ap-01106-MH <br><br> **MEMORANDUM\*** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Debtor Vance Johnson appeals the bankruptcy court's judgment declaring his $514,245 debt owed to Bankers Healthcare Group, LLC ("BHG") nondischargeable under § 523(a)(2)(A) and (B).[1]

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" referenced are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

We AFFIRM.

## FACTS

**A.  Pre-Bankruptcy Events**

Dr. Johnson is a physician and 100% owner of Temecula Valley Pain Medical Group, Inc. ("TVPMG"). In 2017, Dr. Johnson obtained on behalf of TVPMG a $514,245 loan from BHG, which he personally guaranteed.

As part of the loan approval process, Dr. Johnson submitted a loan application to BHG, which included a signed "Statement of Intended Primary Purpose of the Loan" ("Purpose Statement") indicating that the "specific business reason" for the loan was "Practice Expansion." The Purpose Statement also included an acknowledgment that Dr. Johnson understood that the loan was a commercial loan to be used "primarily for other than personal, family, or household purposes" and that "BHG has reasonably and justifiably relied on this Statement of Intended Purpose in connection with reviewing and considering my loan application for approval and funding."

Dr. Johnson also provided a signed personal financial statement ("PFS"), a company financial statement for TVPMG ("CFS"), and a personal guaranty. The PFS showed total annual income of $250,000, assets of $2,010,000, and liabilities of $468,614, consisting of a $463,594 mortgage and $5,020 in credit card debt. The PFS also indicated that Dr. Johnson did not pay alimony or child support. The CFS indicated TVPMG had assets of $655,966.21 and no liabilities.

2

During the application process, BHG discovered that Dr. Johnson owed the IRS $151,891 and directed payment of that liability from the loan proceeds. It also apparently discovered that Dr. Johnson had a monthly domestic support obligation of $18,000.[2]

BHG disbursed the loan proceeds to Dr. Johnson's newly opened personal bank account in July 2017. From those proceeds, Dr. Johnson paid $151,229.08 to the IRS, $72,468 for back child support, and $9,935 for jewelry. The record contains no evidence of how the remaining funds were spent.

Approximately five weeks after the disbursement, TVPMG ceased operations. TVPMG made five loan payments to BHG, the last on December 25, 2017.

## B. Bankruptcy Events

Dr. Johnson filed a chapter 11 petition in February 2018. He listed on his schedules the unsecured debt owed to BHG on his personal guaranty. He also included on his schedules a secured debt to the IRS of $142,337, priority debts to the California Franchise Tax Board ("FTB") of $62,888 for 2015 and $14,563 for 2016, and a nonpriority unsecured debt to Pacific Premier Bank ("PPB") of $218,060 incurred in 2016-2017. Proofs of claim were filed reflecting debts incurred before July 2017 that had not been

---

[2] Although no domestic support obligation appears on the PFS, it is listed in documents prepared by BHG.

3

included on Dr. Johnson's PFS.[3] For example, the IRS filed a proof of claim in the total amount of $168,237.65 (later amended to $178,586.04), pertaining to tax debt incurred for 2012-2018, and Dr. Johnson's ex-wife filed a proof of claim that included past due support dating back to 2012.

A few months after the petition date, the bankruptcy court granted Dr. Johnson's motion to convert the case to chapter 7. BHG filed an adversary proceeding objecting to the discharge of its claim under § 523(a)(2)(A) and (B), (a)(4), and (a)(6). The matter proceeded to a one-day trial. Daniel Johnston, portfolio servicing manager for BHG, testified on behalf of the plaintiff, and Dr. Johnson testified for the defense.

After trial, the bankruptcy court issued a memorandum of decision and a judgment declaring the debt nondischargeable under § 523(a)(2)(A) and (a)(2)(B).[4] The bankruptcy court concluded that BHG had not established the required elements under § 523(a)(4) or (a)(6). Dr. Johnson timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[3] The bankruptcy court took judicial notice that the claims were filed, but not for the truth of the matters asserted therein.

[4] *Bankers Healthcare Grp. v. Johnson (In re Johnson)*, 638 B.R. 782 (Bankr. C.D. Cal. 2022).

## ISSUES

Did the bankruptcy court abuse its discretion in admitting into evidence the § 341(a) hearing transcript?

Did the bankruptcy court err in finding Dr. Johnson's debt to BHG nondischargeable under § 523(a)(2)(A)?

Did the bankruptcy court err in finding Dr. Johnson's debt to BHG nondischargeable under § 523(a)(2)(B)?

## STANDARDS OF REVIEW

We review the bankruptcy court's evidentiary rulings for abuse of discretion, and we reverse only if any error would have been prejudicial to the appellant. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351–52 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested"; and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

The determination that a claim is excepted from discharge under § 523(a)(2) presents mixed issues of law and fact that we review de novo. *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826 (9th Cir. 2002). Under de novo review, "we consider a matter anew, as if no decision had been

5

made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the bankruptcy court's findings of fact for clear error. *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011). The bankruptcy court's determinations concerning the debtor's intent and the creditor's justifiable or reasonable reliance are factual matters reviewed for clear error. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729 (9th Cir. BAP 1999) (intent); *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1456 (9th Cir. 1992) (justifiable reliance); *Maxwell v. Oregon (In re Maxwell)*, 600 B.R. 62, 69 (9th Cir. BAP 2019) (reasonable reliance).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the bankruptcy judge's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). "The bankruptcy court's witness credibility findings are entitled to special deference, and are also reviewed for clear error." *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009) (*citing* Rule 8013; *Anderson*, 470 U.S. at 573).

DISCUSSION

**A.    The bankruptcy court did not abuse its discretion in admitting the § 341(a) meeting transcript.**

At trial, the bankruptcy court admitted the transcript of Dr. Johnson's § 341(a) meeting ("341 Transcript") as a deposition taken in an earlier action pursuant to Civil Rule 32(a)(8).[5] We have found no Ninth Circuit authority addressing the admissibility of § 341 meeting transcripts, but the Eleventh Circuit has held that a bankruptcy court erred by not admitting § 341 testimony in ruling on a creditor's objection to exemptions. *Key Bank of Me. v. Jost (In re Jost)*, 136 F.3d 1455, 1459 (11th Cir. 1998)). *See also In re Hardy*, 319 B.R. 5, 6 (Bankr. M.D. Fla. 2004) (noting that § 341 testimony is admissible as a rebuttal or impeachment tool but questioning its admissibility as substantive evidence). Although it is not clear to us whether Civil Rule 32(a)(8) is the applicable authority for admission of the 341 Transcript, as explained below, we find no abuse of discretion in the bankruptcy court's decision to consider that evidence.

Dr. Johnson contended in his opening brief on appeal that the bankruptcy court abused its discretion in admitting the 341 Transcript

---

[5] A deposition may be used against a party at trial if: "(A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)." Civil Rule 32(a)(1). Subsection (a)(8) of that rule provides that a deposition taken in "any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken

because it was not properly authenticated and is hearsay. At oral argument, however, Dr. Johnson's counsel conceded that if the 341 Transcript were properly authenticated, the testimony therein would not be hearsay.[6]

The bankruptcy court did not err in concluding that the 341 Transcript was properly authenticated. Federal Rule of Evidence 901(a) provides, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." At trial, Mr. Johnston testified that BHG had requested a copy of the 341 Transcript and that the exhibit at issue was a true and correct copy of the transcript received in response. The 341 Transcript contains the certification of the transcriber that the transcript "is a true and accurate record of the proceedings." Dr. Johnson has not explained why this evidence was insufficient to support a finding that the 341 Transcript is what it purports to be.

On appeal, Dr. Johnson raises new objections regarding authentication, arguing that under Civil Rule 30(f)(1), the deposition officer "must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony" and "must seal the

---

may also be used as allowed by the Federal Rules of Evidence."

[6] Admissions by a party-opponent are not hearsay. Fed. R. Evid. 801(d)(2). And Civil Rule 32(a) permits the use of a deposition against a party so long as it would be admissible if the deponent were present and testifying.

deposition in an envelope or package bearing the title of the action" marked with the witness's name. Dr. Johnson asserts that the 341 Transcript does not meet these requirements and thus there is no indicia of reliability. Dr. Johnson waived this argument by not raising it in the bankruptcy court. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (appellate courts in the Ninth Circuit will not consider arguments that are not properly raised in the trial court).

**B.     The bankruptcy court did not err in finding the debt to BHG nondischargeable under § 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from discharge debts resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." A creditor seeking to except a debt from discharge based on fraud bears the burden of establishing five elements: (1) misrepresentation, fraudulent omission or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation(s) or omission(s); (3) an intent to deceive; (4) justifiable reliance by the creditor on the representations or conduct; and (5) damage to the creditor proximately caused by its reliance on such representation(s) or conduct. *See Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010); *In re Weinberg*, 410 B.R. at 35.

The bankruptcy court correctly found Dr. Johnson's representation that the loan would be used to expand TVPMG's practice was a false statement that could be used to support a claim under § 523(a)(2)(A). *See*

*Reingold v. Shaffer (In re Reingold)*, BAP Nos. CC-12-1112-PaDKi, CC-12-1141-PaDKi, 2013 WL 1136546 (9th Cir. BAP Mar. 19, 2013). In *Reingold*, the BAP affirmed the bankruptcy court's finding that the debtor made a misrepresentation to the creditor when he stated in the loan agreement that the funds would be used for the purchase and rehabilitation of a single-family residence, which did not occur. 2013 WL 1136546, at *6. In reaching its decision, the Panel relied on Ninth Circuit authority that a false representation can be established by failure to disclose a material fact when there is a duty to disclose. *Id. (citing Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1088-89 (9th Cir. 1996)). The Panel also cited *United States v. Gibson*, 690 F.2d 697, 701 (9th Cir. 1982), for the rule that the nature of a scheme to defraud can be shown by accumulated evidence and subsequent conduct. *In re Reingold*, 2013 WL 1136546, at *6. Here, Dr. Johnson failed to disclose that the funds would be used for purposes other than expanding his practice.

Next, the bankruptcy court found that Dr. Johnson's testimony lacked credibility and that circumstantial evidence established that Dr. Johnson knew at the time he made it that the representation was false and that he intended to deceive BHG. "Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (9th Cir. BAP 1998) (quoting *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir. 1985)).

10

At trial, Dr. Johnson testified that the purpose of the loan was to expand the business by adding "a couple of neurosurgeons," with the cost (at least $1.5 million) guaranteed by Loma Linda Hospital. He explained that the neurosurgeons ultimately did not join the practice because: (1) the hospital reneged on its agreement to guarantee the cost; (2) at the same time, certain provisions of the Affordable Care Act "dramatically affected our reimbursability for our procedures that had the widest margin"; and (3) changes to workers compensation reimbursement also changed the business's projections. On cross-examination, Dr. Johnson testified initially that he did not know when the hospital reneged but then stated that it was "around the time of the loan." But he could not remember any details of how he found out.

The bankruptcy court found this testimony to be "completely lacking in credibility." We must defer to the bankruptcy court's credibility finding because, as the trier of fact, that court could observe variations in the witness's demeanor and tone of voice. *In re Retz*, 606 F.3d at 1196. The court found that Dr. Johnson's testimony was "vague and evasive, lacks detail and support, is contradictory as to what practice expansion meant and when those efforts ended . . . ." The bankruptcy court also noted that TVMPG shut down shortly after the loan funded, and that at the § 341(a)

11

meeting, Dr. Johnson had testified that his recruiting efforts had occurred roughly in the year preceding September 2017.[7]

Additionally, the bankruptcy court found that the circumstantial evidence supported its finding that Dr. Johnson did not intend to use the loan proceeds for practice expansion. Specifically, the business closed five weeks after the loan was funded, and Dr. Johnson immediately used almost half the loan proceeds to pay personal debts to the IRS, for child support, and for jewelry, with the disposition of the remaining funds not explained.[8] The bankruptcy court also noted that, at the § 341(a) meeting, Dr. Johnson "could provide no coherent, detailed explanation whatsoever as to how and when Plaintiff's loan proceeds were used to pay expenses for expansion, other than that they were used 'mostly to operate TVPMG, I think.'"

The bankruptcy court also found that BHG justifiably relied on Dr. Johnson's representation regarding the purpose of the loan. In considering whether reliance was justifiable, "the court must look to all of the circumstances surrounding the particular transaction, and must

---

[7] At oral argument, Dr. Johnson's counsel asserted that there was no evidence of when the business shut down, but the joint pre-trial stipulation (signed by Dr. Johnson's counsel) lists as an admitted fact that "TVMPG ceased operations on or about August 31, 2017."

[8] Dr. Johnson asserts that it was BHG's burden to show how the rest of the funds were spent. We disagree. BHG had the burden to show by a preponderance of the evidence that Dr. Johnson did not intend to use the proceeds for practice expansion. It met this burden by showing that a significant portion of those proceeds were spent on personal debts and that TVPMG shut down mere weeks after the loan funded.

particularly consider the subjective effect of those circumstances upon the creditor." *In re Kirsh*, 973 F.2d at 1460. A creditor may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. *Id.* at 1458.

The bankruptcy court found that BHG's reliance was justifiable given that Dr. Johnson never disclosed that expansion efforts had failed or that TVPMG was experiencing financial hardship. The bankruptcy court also pointed out that the testimony established that BHG had done its due diligence and, in approving the loan, it had justifiably relied upon financial information Dr. Johnson provided as well as his high credit score.

Finally, the bankruptcy court found that BHG's damages had been proximately caused by Dr. Johnson's misrepresentation. This finding is supported by Mr. Johnston's testimony that BHG would not have made the loan had it known that Dr. Johnson did not intend to use the funds for practice expansion.

On appeal, Dr. Johnson argues that the representation that the loan proceeds were to be used for business expansion is not a basis for a § 523(a)(2)(A) claim. He contends that the bankruptcy court's findings were inconsistent: the bankruptcy court found that the representation in the Purpose Statement that the loan proceeds would be used "primarily for other than personal, family, or household purposes" was not a basis for a nondischargeability claim under § 523(a)(2)(A) because BHG did not prove that the proceeds were used primarily for nonbusiness purposes, but it

13

found that the statement of the business purpose of the loan did support such a claim. Dr. Johnson's view seems to be that the latter (specific) statement was subsumed by the former (general) statement.

We discern no error in the bankruptcy court's interpretation of the Purpose Statement as containing two separate representations—one general and one specific—and in analyzing those separately. Even though some of the proceeds were used to pay personal debts, there was no evidence that **any** of the loan proceeds were used for practice expansion. Notably, Dr. Johnson testified at trial that "the expansion never occurred."

Dr. Johnson also argues that the justifiable reliance element was not met. As part of this argument, he erroneously assumes that BHG is asserting that he represented that the loan proceeds would be used "exclusively" for practice expansion. He contends that BHG could not have justifiably relied on such a statement when it required Dr. Johnson to use a significant portion of the loan proceeds to pay personal IRS debt. But Dr. Johnson represented that the "specific business reason" for the loan was practice expansion. As noted, there is no evidence that any of the loan proceeds were used for that purpose, and no expansion occurred.

Dr. Johnson also assigns error to the bankruptcy court's reliance on *AT&T Universal Card Servs., Inc. v. Nguyen (In re Nguyen)*, 235 B.R. 76, 86 (Bankr. N.D. Cal. 1999). The bankruptcy court cited *Nguyen* for the proposition that a creditor (in that case, a credit card issuer) justifiably relies on a representation of intent to repay so long as the account is not in

default and any initial investigations into a credit report do not raise red flags. Dr. Johnson argues that *Nguyen* is distinguishable because, in the credit card context, the debtor's representation to repay is unambiguous, but in this case, the representation that the loan proceeds would be used for business expansion was ambiguous. We disagree with this reasoning. The statement that practice expansion was the primary purpose of the loan is an implicit promise that at least some of the funds would be spent for that purpose, and, as a result, TVPMG or Dr. Johnson would be able to pay back the loan as promised. As discussed, BHG's reliance on that statement was justifiable in the circumstances.

Based on the foregoing, the bankruptcy court's factual findings on the elements of the § 523(a)(2)(A) claim were not illogical, implausible, or without support in the record.

C. **The bankruptcy court did not err in finding the debt to BHG nondischargeable under § 523(a)(2)(B).**

> To prevail on an exception to discharge claim under § 523(a)(2)(B), the creditor must show, by a preponderance of the evidence, that: (1) it provided debtor with money, property, services or credit based on a written representation of fact by the debtor as to the debtor's financial condition; (2) the representation was materially false; (3) the debtor knew the representation was false when made; (4) the debtor made the representation with the intention of deceiving the creditor; (5) the creditor relied on the representation; (6) the creditor's reliance was reasonable; and (7) damage proximately resulted from the representation.

*In re Maxwell*, 600 B.R. at 69–70 (citations omitted).

15

The bankruptcy court found that Dr. Johnson's failure to disclose all his debts on the PFS was a material misrepresentation because it painted "a substantially untruthful picture of [his] financial condition by misrepresenting information of the type which would normally [affect] the decision to grant credit." *First Interstate Bank of Nev. v. Greene (In re Greene)*, 96 B.R. 279, 283 (9th Cir. BAP 1989) (citations omitted). In the PFS, Dr. Johnson indicated that his total debt was $468,618, comprised of a mortgage liability and credit card debts. He did not disclose approximately $77,000 owed to FTB and $218,000 owed to PPB. These debts were incurred before he applied for the loan. In addition, Dr. Johnson paid out of the loan proceeds $49,468 for child support. Based on the evidence at trial and Dr. Johnson's lack of credibility, the bankruptcy court found that he knew or should have known of these debts when he signed the PFS. Accordingly, the bankruptcy court found that Dr. Johnson intended to deceive BHG.

The bankruptcy court also found that BHG's reliance on the PFS was both actual and reasonable based on Mr. Johnston's testimony that BHG would not have made the loan had it known of Dr. Johnson's additional debts because it would have increased Dr. Johnson's debt-to-income ratio to more than 30%. The court also cited the fact that BHG required Dr. Johnson to pay the IRS debt from the loan proceeds, indicating that Dr. Johnson's debts were a material consideration in BHG's approval of the loan.

Finally, the bankruptcy court found that BHG suffered damages proximately caused by Dr. Johnson's misrepresentation of his personal debts. This finding was based on Mr. Johnston's testimony that BHG would not have made the loan had it known of the additional debts and that Dr. Johnson's failure to repay the loan was a reasonably foreseeable consequence of his misrepresentation.

On appeal, Dr. Johnson argues that the record contains no evidence that he made a materially false representation. He points out that the bankruptcy court found that BHG knew Dr. Johnson had tax and alimony obligations when it made the loan, which "precludes" a finding that he made a materially false representation. The record shows that BHG was aware that he owed money to the IRS and that he had an $18,000 monthly domestic support obligation, but, importantly, **not** that he had outstanding debt to the FTB, PPB, and for past due support. Regarding the PPB debt, he points to his trial testimony that he did not recall having any loan to PPB "at that time." But the bankruptcy court found this testimony not credible. He also points to Mr. Johnston's testimony that BHG conducts UCC searches when processing loan applications, which would have revealed the PPB debt. But there is no evidence in the record that PPB filed a UCC-1 statement or that BHG was aware of one.

Dr. Johnson further argues that BHG could not have actually or reasonably relied on the PFS. He points to the "CMS and Cash Flow Calculation" prepared by BHG, which reflected personal consumer debt

17

totaling $363,924 (including mortgage debt of $86,928) and a debt-to-income ratio of 30.09%. He complains that the bankruptcy court did not consider that document, but it was not admitted into evidence. Mr. Johnston **did** testify regarding a "Loan Summary" prepared by BHG that was admitted at trial and reflected a debt-to-income ratio of 30.09%. He testified that the calculation of the debt-to-income ratio did not include the IRS or PPB debts. Accordingly, Dr. Johnson's argument fails.

Dr. Johnson has not shown that the bankruptcy court's findings on the elements of the § 523(a)(2)(B) claim were illogical, implausible, or without support in the record.

## CONCLUSION

For these reasons, the bankruptcy court did not err in finding Dr. Johnson's debt to BHG nondischargeable under § 523(a)(2)(A) and (a)(2)(B). We AFFIRM.